Jambs A. Delehanty, S.
By its decision (Matter of Gruner, 295 N. Y. 510) the Court of Appeals definitively fixed the rights of the New York Trust Company as a secured creditor and the rights of the United States Government as a preferred creditor of this estate. The Court of Appeals also ruled on the claim of the State of New York and held that the rights of the New York Trust Company to the proceeds of the sale of the seat on the Stock Exchange owned by deceased were superior to the rights of the State of New York (p. 525). The State later moved in the Court of Appeals for reargument. The motion was denied with the following comment: “ Motion [by respondent State of New York] for reargument denied. Our remittitur provided that the matter be remitted to the Surrogate’s Court for further proceedings not inconsistent with the opinion. That court may, if so advised, receive evidence of facts not presented by the record before us, which are found to be necessary for a proper determination of the proceeding within the principles outlined in our opinion.” (Matter of Gruner, 296 N. Y. 668, 669.)
*473 The administratrix c. t. a. filed a new account to which the State Tax Commission filed objections on the ground that it failed to accord priority to the State’s claim over the claim of the New York Trust Company, particularly in respect of the sum of $2,295.36 with interest thereon. The objections allege that the State of New York had sought to enforce its right to that sum prior to the perfection of the lien of the New York Trust Company by taking the following steps: (a) by filing a claim therefor with the administratrix on May 27, 1943; (b) by issuing a warrant against deceased under section 380 of the Tax Law on June 22, 1935 and filing the warrant with the County Clerk on July 2,1935; (c) by instituting supplementary proceedings against deceased under the warrant in which proceedings an order for the examination of deceased was made on or about November 6, 1941. The State Tax Commission also objected to the account on the ground that it fails to set forth its claim for interest on the sum which deceased owed it. This objection it later withdrew.
New York Trust Company filed objections to the account contending that no administration expenses could be charged to the proceeds of the sale of the exchange seat but its brief indicates that these contentions have now been abandoned except possibly that the trust company will still contend on the settlement of the decree for the marshalling of assets so far as any unpledged property is available to minimize what it calls the invasion of its lien on the proceeds of the Exchange seat.
The sole question is whether the State of New York is to be preferred over the New York Trust Company. The account shows that there remains on hand the sum of $50,185.77, of which $49,000 represents the proceeds of sale of the seat on the New York Stock Exchange. The United States Government has a claim in the sum of $21,409.88. It is clear, therefore, that whatever is paid to the State of New York on its claim in the principal sum of $2,295.36 must be paid, if at all, out of the proceeds of sale of the Exchange seat.
Since the State relies in part upon its acts during the decedent’s lifetime to support its claim to priority over the Trust Company it is necessary to examine the items in the State’s claim. It originally asserted a claim of $2,504.01. One^ of^ the items in this claim was $208.65, representing deceased’s liability for income tax for the year 1942. It is conceded that the State first filed this claim with the estate after the perfection of the lien of the trust company, and this item is accordingly not included in the amount in respect of which priority is claimed. *474 This leaves the State’s claim for priority in the sum of $2,295.36, made up of the following items:
Balance of amount shown in return for 1933 and not
paid — Assessment No. 597865 ..................$1,718.62
Balance of amount shown due after auditing of 1933
return — Assessment No. 680458 ................ 100.04
Balance due on 1937 income tax return — Assessment No. A 133745 .................................. 476.70
Total........$2,295.36
It is necessary to segregate these amounts because all steps taken by the State to collect its claim during the lifetime of deceased related only to the first item of $1,718.62. The only act of the State in relation to the entire balance of $2,295.36 was the filing of the claim with the administratrix c. t. a. together with an assertion of a right to a preference. The claim was filed on or about May 27, 1943. The lien of the trust company was perfected in March, 1944 when the Exchange seat was sold.
In respect of this lien the Court of Appeals said (295 N. Y. 510, 517-518): “ The interest which passed to the trust company here by reason of the assignment was the right to receive the proceeds when they became available after the payments enumerated supra. "When they became available, the lien attached. * * * The lien of the trust company here was an inchoate equitable lien which did not become perfected under the circumstances disclosed until the proceeds of the sale of the seat became available after the claims of the exchange and its members were satisfied.” (Italics in original.)
The seat was sold by the Exchange in March, 1944 and that sum was turned over to the administratrix c. t. a. Under the decision quoted the trust company had an inchoate equitable lien which did not become perfected until March, 1944. In discussing the relative rights of the State of New York and the New York Trust Company the Court of Appeals quoted liberally from the decisions in Matter of Carnegie Trust Co. (206 N. Y. 390, 396, 397); Marshall v. New York (254 U. S. 380, 383, 384), and Giles v. Grover (9 Bing. 128, 139). It pointed out that the State had succeeded to the Crown’s prerogative right of priority. It quoted from Marshall v. New York (supra, p. 382) where it was said that the priority was effective and could be defeated only through the passing of title to the debtor’s property, absolutely “ or by way of lien, before the sovereign sought to enforce his right.” The Court of Appeals said (pp. 524-525): “ As pointed out in the Marshall case (supra, p. 386) the right *475 of priority has been likened to an equitable lien. Here the parties were in a court of equity — the Surrogate’s Court. Action was brought by the trust company against the exchange and the administratrix c. t. a., but discontinued by stipulation by which consent was given to the payment of the proceeds of the sale of the seat to the administratrix. Prior to the sale of the seat and the attachment of the equitable lien to the proceeds of sale, the sovereign State had not ‘ sought to enforce his [its] right ’, although by statute, Tax Law, section 380, it could have issued a warrant and obtained the equivalent of the lien of a judgment by appropriate proceedings and then acted thereon. (Italics supplied.) Since the parties were in a court of equity, equitable principles and rules govern which are not applicable against the United States by reason of its statutory priority under section 3466. * * * As between the State and the trust company we have what may be likened to an inchoate lien in the former and in the latter a perfected lien. * * * To be successful here, the State was required to undertake to assert its rights — as it had the power to do — before the lien attached to the fund. * * * Where, as in this instance, the chose in action was turned into money and became available in the hands of the exchange for payment to the assignor’s administratrix, the equitable lien attached to it immediately and equitable ownership of the fund passed to the trust company, needing but the action of a court of equity to enforce its right to payment. At that moment, the lien of the trust company, which was greater in amount than the proceeds of the sale of the seat, and of all the assets of the estate, became capable of perfection and so was perfected, and the trust company became a secured creditor. Prior to that time when, upon Gruner’s death, his administratrix c. t. a. became the owner of the property in the seat and membership in the exchange (Powell v. Waldron, [89 N. Y. 328] supra), as distinguished from the proceeds of the sale to which the trust company’s lien later attached, section 3466 became applicable because the estate was insolvent, and such property in the seat and membership was thereafter subject to the rights of the United States under that statute.” (Italics in original.)
One Judge dissented from that part of the decision which held that the State of New York was not entitled to a priority over the trust company. In view of the argument of the State Tax Commission in this proceeding the ground of dissent is material. He said (pp. 526-527): “ Even if it be the law that this sovereign right of the State must give way to a perfected lien of another creditor, I do not see how the trust company’s *476 lien can be considered to have been perfected as against the State of New York any more than against the United States of America. Both the trust company and the State came into the Surrogate’s Court to assert their alleged priorities to payment out of a fund which was in the hands of the administrator of the debtor’s estate. Neither the State nor the trust company had reduced the property to possession, and no part of the property had been set off to either. The trust company had no ‘ specific prior lien ’ by attachment, execution or otherwise (see Wise v. Wise Company, 153 N. Y. 507, 511). Even if the trust company’s equitable lien could be considered to have been ‘ perfected ’ when the proceeds of the sale of the seat became available, that time was subsequent to the accrual of the State’s tax claim. Thus we had an insolvency proceeding with a claim filed by the trust company, as holder of an inchoate lien, and another claim filed by the State of New York for past due income taxes. I do not see anything in all that to defeat the State’s undoubted sovereign right to priority over all creditors (except the United States, which has its own special, and paramount, statutory right to first payment).” (Italics supplied.) The word used in the dissent in respect of the State’s claim is “accrual”. The phrase used in the majority opinion is this (p. 525): “ the State was required to undertake to assert its rights — as it had the power to do — before the lien attached to the fund. ’ ’ (Italics supplied.) It would seem from this state of the record that the majority of the court rejected the idea that mere accrual of a tax claim sufficed to establish a perfected lien in behalf of the State. The majority opinion says in terms that the State to be successful must show that it undertook “ to assert its rights ”. The quoted phrase follows an earlier phrase in the majority opinion which says this (pp. 524-525): “ Prior to the sale of the seat and the attachment of the equitable lien to the proceeds of sale, the sovereign State had not ‘ sought to enforce his [its] right ’, although by statute, Tax Law, section 380, it could have issued a warrant and obtained the equivalent of the lien of a judgment by appropriate proceedings and then acted thereon. ’ ’ The phrase “sought to enforce his [its] right” which is used in the majority opinion is taken from the opinion in Marshall v. New York (254 U. S. 380, 382). The case discusses the nature of the State’s right of priority and says that it originates with the common law of England which was adopted as the law of New York by the first Constitution of the State. The priority is held by the New York cases cited in the Marshall decision to have arisen prior to and to exist independently of any statute. The cited case says (p. 382): “ The priority was *477 effective alike whether the property remained in the hands of the debtor, or had been placed in the possession of a third person, or was in custodia legis ”. The case notes the fact that after property is taken out' of the hands of a debtor and placed in the custody of a court it is no longer practicable to make a levy on it and so the writer concludes: ‘ ‘ Am application to the court for payment of the debt du.e was the appropriate remedy. ’ ’ Since the application by the State to the Surrogate’s Court was made by filing its claim with the administratrix on May 27, 1943 and since the perfection of the lien of the trust company was not accomplished until March, 1944 the first question presented is whether or not the inchoate lien of the trust company existent on May 27, 1943 was displaced in favor of the State by the mere filing of the claim with the administratrix. If it be determined that the filing of the claim with the administratrix was a sufficient assertion of priority on the part of the State the court need not inquire into the effectiveness of the steps taken during the lifetime of deceased.
When deceased died there was no money fund — only a property right in the Exchange seat subject to the rights of the Exchange itself and of others whose rights the Exchange would undertake to enforce. When the administratrix was appointed she took title to all of the deceased’s assets in this jurisdiction. Among those assets was the claim to the equity in the Exchange seat. When this court appointed the administratrix it took deceased’s property into its hands for administration. From that time forward the property of deceased was in custodia legis. From that time on no claimant against the estate could take any effective steps in relation to them other than by application to this court. The filing of the claim by the State was the equivalent of the beginning of an action (Matter of Whitcher, 230 App. Div. 239, specifically approved on this point in Matter of Schorer, 272 N. Y. 247, 250). The last cited case held that all that is required to give the Surrogate jurisdiction is the filing of a claim and that thereupon the claim is to be passed on in a judicial accounting unless allowed. The specific holding in the case of Marshall v. New York (supra) that the prerogative of the State could not be enforced by levy or seizure after the court took the property into its custody and that an application to the court for payment of the debt due was the appropriate remedy controls the determination of this issue. The filing of the claim on May 27, 1943 constituted the equivalent of a suit, of a levy and of a seizure so far as the prerogative of the State is concerned. And since that theoretical levy and seizure had been made before the sale of the seat in March, 1944 the lien *478 of the trust company must be held to be subservient to the prerogative right of the State to be paid the sum of $2,295.36.
Accordingly the court holds on the record now before this court, supplemented by proof never before the Court of Appeals, that the fund now for distribution must be appropriated first to satisfy in full the claim of the United States and then to satisfy the claim of the State of New York to the extent stated with the balance payable to the trust company.
Submit, on notice, decree accordingly.