**PREMIUM FINANCING SPECIALISTS, INC., Plaintiff-Appellant,**

v.

**Robert P. LINDSEY, Trustee, Defendant-Appellee.**

**Bankruptcy No. J–C–80–249.**

United States District Court, E. D. Arkansas, Jonesboro Division.

May 19, 1981.

W. P. Hamilton, Little Rock, Ark., for plaintiff-appellant.

Ben F. Arnold, Davidson, Plastiras, Horne, Hollingsworth & Arnold, Little Rock, Ark., Warren Dupwee, Jonesboro, Ark., A. Jan Thomas, Jr., West Memphis, Ark., for defendant-appellee.

**MEMORANDUM ORDER**

HENRY WOODS, Bankruptcy Judge.

This case is before us on an appeal from bankruptcy court. The defendant, an in-

surance premium financing company, asks us to reverse an order denying it relief from the automatic stay provisions of the bankruptcy code. It is alleged that the bankrupt, Cox Cotton Company, and the defendant entered into a premium financing agreement whereby the financing company provided the funds for casualty insurance premiums in return for the bankrupt's promise to repay the loan in nine monthly installments. The financing agreement contained the following provisions:

> The named insured: 1. Assigns and directs that payment be made to PFS as security for the total amount payable hereunder any and all unearned premiums and dividends which may become payable under the policies listed above, and loss payments which reduce the unearned premiums, subject to any mortgage or loss payee interest. . . . 6. Hereby irrevocably appoints PFS attorney-in-fact of the insured with full authority to cancel all policies above identified and receive all sums resulting therefrom.

On August 12, 1980 Cox Cotton filed for bankruptcy under Chapter 7. At that point three payments had been made under the financing agreement, and PFS had not exercised its rights to cancel the policies.

PFS then appeared before the bankruptcy judge to request that it be permitted to cancel the insurance policies and claim the unearned premiums. The bankruptcy judge refused to lift the automatic stay provisions of 11 U.S.C. § 362. The court's decision was based upon the conclusion that the financing companies' right to unearned premiums was not the type of property to which a lien could be attached and that the financing companies were therefore unsecured creditors. In so holding the court relied upon *Sweeney v. Sweeney*, 593 S.W.2d 21 (Ark.1980). There the court was called upon to decide whether retirement pay was personal property which might be divided in a divorce. The court held that it was not saying:

> Appellant next contends that the chancery court erred in granting appellee a statutory interest in appellant's Ford Mo-

tor Company and Honeywell retirement benefits. The decree provides that appellee receive a one-third interest in the retirement benefits with Ford but does not mention the Honeywell benefits. Pension benefits which are vested but not currently due and payable are not personal property. *Knopf v. Knopf*, 264 Ark. 946, 576 S.W.2d 193 (1979). Here on the record before us, it is not demonstrated that any retirement benefits are currently due and payable.

The Arkansas Supreme Court has on several other occasions repeated without detailed explanation the holding in the preceding case. *Knopf v. Knopf*, 264 Ark. 946, 576 S.W.2d 193 (1979); *Fenney v. Fenney*, 259 Ark. 858, 537 S.W.2d 367 (1976). In the first of these decisions, *Fenney, supra*, the court cited a Colorado case which thoroughly explained the position of that court. There it was said:

> "Army retired pay is not a fixed or tangible asset. At no time has it any cash surrender, loan, redemption, or lump sum value. It is payable monthly, but terminates on death. Prior to payment to the retired serviceman, the retired pay cannot be attached or garnished. *See 6 Am.Jur.2d Attachment & Garnishment* §§ 78 and 79. The right to the pension and the retired pay not yet due and payable cannot be assigned, sold, transferred, conveyed, or pledged. *See* 37 U.S.C. § 701(a); 6 *C.J.S. Assignments* § 21. Allotments deductible from such pay are limited to purchases of U.S. bonds or notes, payment of life insurance premiums, voluntary liquidation of indebtedness to the United States, and other allotments in effect prior to retirement. 32 C.F.R. §§ 59.2(6) and 59.3. The pension is not a "return derived from principal" as is the ordinary unearned income. *See* § 15–1–403(b), C.R.S.1973.
>
> "In support of her contention that the retired pay is property, the wife relies on authorities from community property states. There, retirement benefits have been held to be divisible property of the community to the extent the serviceman

was married while in the service. *In Re Marriage of Fithian,* 10 Cal.3d 592, 111 Cal.Rptr. 369, 517 P.2d 449, even if divorce or dissolution of marriage occurred before he is eligible to receive retired pay, *Payne v. Payne,* 82 Wash.2d 573, 512 P.2d 736, but subject to divestment in the event of death, discharge or resignation prior to actual retirement, *Mora v. Mora* (Tex.Civ.App.), 429 S.W.2d 660. However, even in California, it is not treated as true property because it "terminates with the death of the husband, and wife's share also terminates if she predeceases the husband"; the ex-wife's share does not pass to her heirs in event of her death before him. *Fithian, supra.*" (*In Re Marriage of Ellis,* 538 P.2d 1347, 1349–50 (Colo.App.1975).)

After reviewing the preceding decisions, we cannot agree with the Bankruptcy Judge that the statements concerning the divisibility of personal property for the purposes of a divorce settlement are necessarily applicable in a bankruptcy proceeding.

While we have found no recent Arkansas decisions containing facts similar to those now before us, our court did in 1892 give effect to an agreement to repay money advanced for the payment of life insurance premiums. In *McDonald v. Humphries,* 56 Ark. 63, at 66–67, 19 S.W. 234 (1892), the court stated:

> [T]he complaint alleges that these sums were advanced under an agreement that the defendant, C. B. Humphries, should hold the policy as a security for their repayment; and that McDonald acquiesced in the insertion of Mrs. Humphries' name in the policy as one of the payees, upon the assurance of her husband that her name was inserted merely for the purpose of making his security more effectual. If such was the agreement, the effect was to make the plaintiff the real beneficiary of the whole policy, subject to an equitable lien in favor of C. B. Humphries for the amount of his advances.

Other jurisdictions have followed the approach taken by the Arkansas court. In *In Re Crane Sheet Metal Works,* 265 F.Supp. 124 (N.D.Ala.1967), the bankrupt entered into two premium financing agreements which contained the following language:

> " . . . The insured(s) agrees, in the event of a default in the payment of any installment due hereunder, the unpaid balance due shall be immediately due and payable and Easy-Way or Bearer may request cancellation of the insurance policies listed above. The insured(s) hereby irrevocably appoints Easy-Way or Bearer as his or her attorney-in-fact with full authority to cancel the said policies and receive all unearned and return premiums thereon as shall be required to pay the balance due Easy-Way."

The court concluded that the trustee rather than the insurance company was entitled to the unearned premiums and in doing so explained:

> The power of attorney added nothing to the title; if anything, it denied title. It only permitted Petitioner to act as attorney-in-fact for Crane Sheet Metal Works, Inc., so as to enable it to cancel the insurance policies and get the return of the unearned premiums. This power of attorney was not a power coupled with an interest.
>
> When the petition was filed, the property of the Bankrupt was at once in *custodia legis,* and the power of attorney was revoked by operation of law. Petitioner, therefore, had no power or right to interfere with the Bankruptcy Court by taking any property, actually or constructively in possession of the Bankruptcy Court.

However, the court in conclusion did state:

> In this case, the situation as to revocation of the Power of Attorney would, of course, have been different, if Petitioner had had title, an assignment or a lien on the unearned premium.

An agreement that did provide for the assignment of unearned premiums and a power of attorney to cancel the policies was given effect in *Matter of Maplewood Poultry,* 2 B.R. 550 (Bkrtcy.D.Me.1980). There the financing company sought relief from

the automatic stay and requested permission to cancel the policies. The court allowed the financing company to enforce the agreement saying:

> The court must determine the postpetition enforceability of the power of attorney in the present circumstances. While contracts of agency are revoked upon bankruptcy ... an irrevocable power of attorney is not made unenforceable in bankruptcy if coupled with an interest in the subject property superior to that of the trustee in bankruptcy .... A duly perfected security interest in specific property of the debtor is unenforceable against the debtor in possession (trustee in bankruptcy).... Therefore, the power to cancel these insurance policies remained exercisable in Chapter XI as a means of enforcing any duly perfected security interest Thico had in unearned premiums.
>
> ... Thico was granted an assignment of and a security interest in unearned premiums to secure payment of amounts due under the premium finance agreement. The postpetition enforceability of the security interest in unearned premiums depends upon compliance with applicable state law.

.   .   .   .   .

Section 9–104(g) of the New Jersey Uniform Commercial Code excludes form Article 9 coverage "a transfer of an interest or claim in or under any policy of insurance ...." There is no reported case law construing the exclusionary language of section 9–104(g) in reference to a security interest in unearned insurance premiums. But the breadth of the exclusion in section 9–104(g) itself and the comments of its draftsmen convince the court that Article 9 of the Uniform Commercial Code does not apply to a secured transaction in which the collateral consists of unearned insurance premiums.

The official Uniform Commercial Code Comment states that insurance "transactions are quite special, do not fit easily under a general commercial statute and are adequately covered by existing law."

Professor Grant Gilmore explains forthrightly that the insurance industry effectively communicated its preferences that secured transactions involving insurance not be covered by Article 9 of the Code; and that, accordingly, they were excluded. Gilmore, *Security Interests in Personal Property*, § 10.7 at 315 (1965). While the section 9–104(g) exclusion should be construed narrowly so as to give Article 9 the broadest possible application, the parties have neither suggested nor demonstrated any sound basis upon which the court might consider the grant of a security interest in unearned insurance premiums as anything other than "a transfer of an interest or claim in or under [a] policy of insurance." Although there appears to be no reported New Jersey or Maine case law construing UCC § 9–104(g), even the narrowest reading would seem to require the exclusion from Article 9 coverage of transfers of interests inseparable from insurance policies, such as unearned premiums.

The court then went on to discuss the New Jersey Insurance Premium Financing Company Act, N.J.Rev.Stat.Ann. § 17.16D which provides that premium financing agreements need not be filed to perfect the security interest in unearned premiums.

Of course the Uniform Commercial Code as adopted by the State of Arkansas excludes from Article 9 coverage "a transfer of an interest or claim in or under any policy of insurance, except as provided with respect to proceeds and priorities." Ark. Stat.Ann. § 85–9–104(g). We agree with the analysis contained in *Maplewood Poultry, supra* and conclude that transactions such as this are exempt from the filing requirements contained in Chapter 9 of the Uniform Commercial Code. Apart from the provisions of the Uniform Commercial Code, there are no Arkansas laws which require filing in order to protect security interests. Accordingly, we hold that the appellant had security interest in the unearned premiums. We remand this case to the bankruptcy court for proceedings consistent with this opinion.