**In re DUKE ROOFING CO., INC., Debtor.**

**COMERICA BANK–ANN ARBOR, N.A., Plaintiff,**

v.

**Neal SUTHERLAND, Trustee in Bankruptcy, Defendant.**

**No. 84–CV–4082–DT.**

United States District Court, E.D. Michigan, S.D.

March 22, 1985.

Margaret Austin, Dobson, Griffin & Westerman, P.C., Ann Arbor, Mich., for Comerica Bank.

Thomas Finnerty, Stark & Reagan, P.C., Troy, Mich., for Neal Sutherland.

MEMORANDUM OPINION

RALPH M. FREEMAN, District Judge.

This is an appeal of the Bankruptcy Court's determination that plaintiff has a perfected security interest in unearned insurance premium refunds. There are three issues on appeal. First, are unearned insurance premium refunds within Article Nine of the Uniform Commercial Code as adopted in Michigan? Second, did plaintiff have a perfected security interest in unearned insurance premium refunds of the debtor? And third, is any security interest of plaintiff in the unearned insurance premium valid, enforceable, and sufficient to defeat the interest of the trustee?

### I. Facts

On November 11, 1981, Comerica loaned $160,000 to debtor pursuant to a business loan agreement. The security agreement executed in connection with the loan granted Comerica a security interest in all of the debtor's accounts and inventory. The security agreement defines accounts to include documents, chattel paper, instruments, contract rights, general intangibles, and choses in action, including the right to any tax refunds. Comerica filed a financing statement with the Michigan Secretary of State which perfected its security interest under Article Nine of the Uniform Commercial Code as adopted in Michigan, MCLA §§ 440.9101, et seq.

On January 29, 1983, debtor filed for bankruptcy under Chapter 11. The case was converted to Chapter 7 on October 11, 1983, at which time debtor ceased operations. As part of the process of discontinuing operations, debtor cancelled certain insurance policies it carried in the normal course of business. Four policies were cancelled after conversion to Chapter 7. As a result of these four cancellations, debtor became entitled to $33,805.98 in refunds for unearned insurance premiums.

Comerica asserted that the refunds were general intangibles subject to its security interest under the security agreement, but the trustee declined to turn the funds over to Comerica. Comerica instituted an adversary proceeding against the trustee to obtain all insurance premium refunds to which debtor was entitled. The Bankruptcy Court ruled that Comerica had a valid security interest in the refunds as general intangibles and that it was entitled to receive the refunds. The trustee has appealed from this order.

### II. Applicability of Article Nine

Section 9–104(g) of the UCC states that Article Nine does not apply "[t]o a transfer of an interest or claim in or under any policy of insurance except as provided with respect to proceeds ... and priorities in proceeds...." MCLA § 440.9104(g). This section excludes from Article Nine transfers of interests in unearned insurance premiums. *In re Air Vermont, Inc.,* 40 B.R. 335, 337 (Bankr.D.Vt.1984); *Premium Financing Specialists, Inc. v. Lindsey,* 11 B.R. 135, 138 (E.D.Ark.1981); *In re Auto-Train Corp.,* 9 B.R. 159, 164–65 (Bankr.D.D.C.1981); *Thico Plan, Inc. v. Maplewood Poultry Co.,* 2 B.R. 550, 554–55 (Bankr.D.Me.1980). The court in *Thico Plan* stated:

> There is no reported case law construing the exclusionary language of section 9–104(g) in reference to a security interest in unearned insurance premiums. But the breadth of the exclusion in section 104(g) itself and the comments of its draftsmen convince the court that Article 9 of the Uniform Commercial Code does not apply to a secured transaction in which the collateral consists of unearned insurance premiums.

The official Uniform Commercial Code Comment states that insurance "transactions are quite special, do not fit easily under a general commercial statute and are adequately covered by existing law." Professor Grant Gilmore explains forthrightly that the insurance industry effectively communicated its preference that secured transactions involving insurance not be covered by Article 9 of the Code; and that, accordingly, they were excluded. Gilmore, *Security Interests in Personal Property,* § 10.7 at 315 (1965).

While the section 9–104(g) exclusion should be construed narrowly so as to give Article 9 the broadest possible application, the parties have neither suggested nor demonstrated any sound basis upon which the court might consider the grant of a security interest in unearned insurance premiums as anything other than "a transfer of an interest or claim in or under [a] policy of insurance." Although there appears to be no reported New Jersey or Maine case law construing UCC § 9–104(g), even the narrowest reading would seem to require the exclusion from Article 9 coverage of transfers of interests inseparable from insurance policies, such as unearned premiums.

2 B.R. at 554–55 (footnotes omitted).

This court agrees with the reasoning of the court in *Thico Plan.* No authority holds that unearned insurance premiums are not within the section 9–104(g) exclusion. This court holds, therefore, that the unearned insurance premium refunds here at issue are not within the coverage of Article Nine of the Uniform Commercial Code. In cases where Article Nine is held inapplicable, the court must apply state statutes, *see, e.g., Thico Plan, Inc. v. Maplewood Poultry Co.,* 2 B.R. 550, 555 (Bankr.D.Me.1980) (applying New Jersey Insurance Premium Finance Company Act), or, where no statute applies, state common law, *see, e.g., Premium Financing Specialists, Inc. v. Lindsey,* 11 B.R. 135, 136–37 (E.D.Ark.1981), and *In Re Rogers,* 6 B.R. 472, 474 (Bankr.S.D.Iowa 1980). Unlike some states which have passed special statutes covering unearned insurance premiums, *see, e.g.,* New Jersey Insurance Premium Finance Company Act, N.J.Stat. Ann. § 17:16D–1 *et seq.,* Michigan has no statute which covers purported security interests in unearned insurance premium refunds. This court, therefore, must apply the common law of Michigan in resolving the remaining issues before it.

### III. Common Law Security Interest in Insurance Premium Refunds

Although the parties disagree over whether UCC definitions apply in this case, the right to a refund of unearned insurance premiums in which Comerica claims to have a security interest can only be described as a "general intangible." More specifically, the right to a refund can be defined as a "future intangible" since the debtor had no right to such a refund at the time Comerica was purportedly assigned an interest in such refunds. The problem facing the court in attempting to apply the common law is that courts were only beginning to grapple with assignments of future intangibles at the time Article Nine was adopted. Although Article Nine recognizes after-acquired property interests in intangibles, judicial recognition of such interests never came to full term. *See* 1 G. Gilmore, *Security Interests in Personal Property* § 7.10, at 229 n. 2 (1965). The law's problem in recognizing assignment of future intangibles is of a metaphysical nature: *qui non habet, ille non dat,* or one cannot transfer title to property he does not own. "The traditional attitude of the common law toward interests in future or after-acquired property was that only an imperfect or 'equitable' interest could be created prior to acquisition of the property and that some new act after acquisition was required to perfect the interest." 1 G. Gilmore, *supra,* § 7.10, at 229–30.

The best picture of the common law with respect to a fact situation such as the present one can be gleaned from two decisions of the New York Court of Appeals: *In re Gruner,* 295 N.Y. 510, 68 N.E.2d 514 (1946), and *City of New York v. Bedford Bar & Grill,* 2 N.Y.2d 429, 161 N.Y.S.2d 67, 141 N.E.2d 575 (1957). These cases, like the present one, involved a purported assignment of a security interest in a money fund not yet in existence at the time of the purported assignment.

In *Gruner,* the New York Trust Company was granted a security interest in Gruner's membership in and seat on the New York Stock Exchange. The assignment was intended to serve as collateral for a demand note issued to Gruner. Gruner later died and his seat on the exchange was

sold. The trust company claimed a lien on the proceeds of the sale in the amount owing on the note, while both the United States and the State of New York claimed priority over the trust company for state and federal taxes owing at the time of Gruner's death.

The court of appeals recognized that Gruner's right to the proceeds from the sale of his seat was a property right which could be assigned, but "[t]he interest which passed to the trust company by reason of the assignment was the right to receive the proceeds *when they become available* after the payments enumerated supra. When they became available, the lien attached." 295 N.Y. at 511, 68 N.E.2d at 518 (emphasis in original). The court then held that the United States, which had a priority dating from Gruner's death by virtue of section 3466 of the Revised Statutes, has a claim superior to the trust company's claim. The court held that the state, however, had only an inchoate lien under state law; since the trust company's lien became perfected before the state took any steps toward perfection, the trust company had priority over the state.[1] 295 N.Y. at 523–526, 68 N.E.2d at 522–23.

In *City of New York v. Bedford Bar & Grill*, 2 N.Y.2d 429, 161 N.Y.S.2d 67, 141 N.E.2d 575 (1957), a bank was granted a security interest in any refund which might become due upon cancellation of Bedford's liquor store license. Bedford cancelled its license after the bank called in Bedford's loan. A month after the cancellation, the City of New York, to which Bedford owed taxes, became a judgment lien creditor on the license fee refund which was still in the hands of the state comptroller. The court of appeals held that the bank had no better than an equitable assignment, subordinate to the state's lien, because the fund assigned was one to come into existence in the future. "The undoubted general rule ... is that as between a judgment creditor's lien and the equitable lien of an as-

signee of property subsequently to be acquired, the latter, while his rights will be enforced in equity as against his assignor, has no right at all as against the former." 2 N.Y.2d at 432–33, 141 N.E.2d at 576 (citation omitted). Even the dissenting judge, Judge Froessel, agreed that a security interest in a refund cannot be perfected until the refund becomes due. 2 N.Y.2d at 436, 141 N.E.2d at 579.

The only Michigan case addressing an assignment of a refund of unearned insurance premiums is consistent with the analysis of the New York cases. In *National Premium Budget Plan Corp. v. Siegel Agency, Inc.*, 43 Mich.App. 29, 34, 204 N.W.2d 30 (1972), the court found that a premium financer had an interest in refunds of unearned premiums enforceable against the insureds/debtors. The premium financer did not have to compete with a judgment lien creditor for the refunds; enforcement of the assignment as against the assignor, therefore, was consistent with the general rule enunciated in *Bedford Bar & Grill.*

■ The court must now apply these principles to the case at bar. Upon conversion of the case to chapter seven, the trustee gained the status of a judgment lien creditor. 11 U.S.C. § 544. The debtor had no property right in any refund of unearned insurance premiums at this time because the insurance policies had not yet been cancelled. *In re Gross-Feibel Co., Inc.*, 21 B.R. 648, 649–50 (Bankr.S.D.Ohio 1982). Upon cancellation of the policies after conversion to chapter 7, the right to the refund vested in the trustee. *See In re Radabaugh*, 4 UCC Rep.Serv. 355, 357–58 (S.D.Ohio 1966). Although Comerica had an equitable interest in the refunds enforceable against the debtor, Comerica had no right to the refunds as against the trustee in bankruptcy.

---

1. In further proceedings before the Surrogate's Court, evidence established that the state had made a claim upon Gruner's administratrix c.t.a. prior to the sale of the seat. The court,

therefore, held that the state had priority over the trust company. *In re Gruner's Estate,* 4 Misc.2d 471, 74 N.Y.S.2d 38 (Surr.Ct.1947).

The Bankruptcy Court, in finding that Comerica had a perfected security interest in the refunds enforceable against the trustee, relied upon *In re Kendrick & King Lumber, Inc.,* 14 B.R. 764 (Bankr.W.D. Okla.1981), and *In re Certified Packaging, Inc.,* 8 UCC Rep.Serv. 95 (D.Utah 1970). These cases are inapplicable for two reasons. First, both cases involved income tax refunds in which a creditor claimed a security interest pursuant to an assignment of "general intangibles and future accounts receivable." In each case, the income tax return claiming the refund was filed prior to the initiation of bankruptcy proceedings. The debtor, therefore, had a present right to the refunds which could be assigned. Even the common law recognized that a debt already earned and presently due is assignable. 1 G. Gilmore, *supra,* § 7.10, at 230. Second, security interests in income tax refunds are not excluded from the coverage of Article Nine of the UCC; therefore, the assignability of interests in such refunds was analyzed according to the UCC rather than the common law. As noted above, the UCC recognized security interests in future intangibles to an extent unknown to the common law.

Comerica relies heavily upon dictum in *Thico Plan, Inc. v. Maplewood Poultry Co.,* 2 B.R. 550, 554 n. 5 (Bankr.D.Me.1980), wherein the court states:

> Maine common law requires possession of the collateral as a prerequisite to the enforceability against third persons of a pledge of intangibles.... A pledge of insurance policies requires that the pledgee maintain physical possession of the policies. Here, the collateral is not the insurance policies themselves, but the unearned premiums, a general intangible. The perfection of a pledge of general intangibles under the common law required possession by the pledgee of the evidence of the pledge itself. Since Thico retained possession of the premium finance agreement under which the security interest in unearned insurance premiums was created, it would appear that sufficient compliance was had with the pledge perfection requirements of Maine common law.

To the extent that this reasoning would apply to the case at bar, this court finds such reasoning to be contrary to the common law. This court need not disagree with the court in *Thico Plan,* however, since the case can be distinguished.

*Thico Plan* involved a premium financing agreement. In such a transaction, a premium financer lends a debtor the funds with which to pay the debtor's insurance premiums. As collateral, the debtor expressly assigns to the premium financer a security interest in any unearned premiums which may be refunded. *Premium Financing Specialists, Inc. v. Lindsey,* 11 B.R. 135, 136 (E.D.Ark.1981); *Thico Plan, Inc. v. Maplewood Poultry Co.,* 2 B.R. at 552. Were this case to involve a premium financing agreement as described above, the result might be different.

Premium financing agreements are common commercial transactions. They are recognized in some states by statute. Although some authorities hold that there can be no vested property right in refunds of unearned premiums except as recognized by statute, *see, e.g., Central Bank v. Harris,* 623 S.W.2d 807, 811 (Tex.App. 1981), this court would hesitate to invalidate, for the sake of a pure legal sophism, a commonly accepted commercial transaction knowingly entered into by the parties. As Justice Grier wisely observed,

> A mere technical dogma of the courts or the common law cannot prohibit the commercial world from inventing or using any species of security not known in the last century. Usage of trade and commerce are acknowledged by courts as part of the common law, although they may have been unknown to Bracton and Blackstone. And this malleability, to suit the necessities and usages of the merchantile and commercial world, is one of the most valuable characteristics of the common law.

*County of Mercer v. Hacket,* 68 U.S. (1 Wall.) 83, 95, 17 L.Ed. 548 (1864). Yet the court, in molding the common law to meet

the socio-economic reality, must exercise caution lest custom generate the rules. B. Cardozo, *The Nature of the Judicial Process* 60–61 (1921). The exercise of such caution in this case means that the court will not give to a blanket assignment of general intangibles a validity beyond that recognized by the common law or legislation. Had the debtor expressly granted to Comerica a security interest in unearned insurance premium refunds, Comerica's cause for expansion of the common law to recognize pre-cancellation perfection of such security interests would be much stronger. *Cf. Michigan Chandelier Co. v. Morse*, 297 Mich. 41, 297 N.W. 64 (1941).

For the reasons set forth herein, the court concludes that the Bankruptcy Court erred in granting Comerica's motion for summary judgment. The record clearly establishes that the trustee's motion for summary judgment should have been granted. The decision of the Bankruptcy Court, therefore, will be reversed and the case will be remanded for entry of summary judgment in favor of defendant. An appropriate order shall be submitted.