FIRST NATIONAL BANK OF HIGHLAND, Respondent, v MER-
CHANTS MUTUAL INSURANCE COMPANY, Appellant.

Third Department, November 30, 1978

### APPEARANCES OF COUNSEL

*Ryan, Bradley, Kerr & Dall Vechia, P. C. (Vincent Bradley* and *David J. Gaffney* of counsel), for appellant.

*Stewart T. Schantz, P. C. (John G. Sisti* of counsel), for respondent.

### OPINION OF THE COURT

KANE, J. P.

The issue to be resolved on this appeal is whether the holder of a perfected security interest in an automobile is entitled to payments arising from a policy of collision insurance upon destruction of the vehicle as the "proceeds" of collateral. pursuant to section 9-306 of the Uniform Commercial Code.

The pertinent facts are not disputed. On July 23, 1974, Lucy and Dennis Brady executed an installment note in favor of the plaintiff bank and, as collateral for the loan, Lucy Brady also executed a security agreement covering a 1970 Volkswagen owned by her. Among other things, the agreement provided that the debtor would furnish insurance on the secured property, naming the bank as the loss payee, and would assign payments resulting from a loss thereof to it. Plaintiff duly filed a financing statement in the office of the Orange County Clerk on July 26, 1974, and Dennis Brady obtained insurance on his wife's vehicle from defendant. However, he apparently did not advise defendant of the bank's interest in the subject automobile. On August 15, 1974 plaintiff requested that Mrs. Brady forward the required policy of insurance to it, but this request was ignored. The collateral was totally destroyed in an accident on January 18, 1975, and Dennis Brady thereafter completed and filed an accident report with defendant, which again failed to reveal the existence of any loss payee. Defendant paid $1,400 to Lucy Brady in full satisfaction of her claim on February 5, 1975, and this appeal ensued when Special Term granted plaintiff's motion for summary judgment in its subsequent action for conversion.

At the time of the foregoing transactions, subdivision (1) of section 9-306 of the Uniform Commercial Code stated that:

" 'Proceeds' includes whatever is received when collateral or proceeds is sold, exchanged, collected or otherwise disposed of. The term also includes the account arising when the right to payment is earned under a contract right." In addition, subdivision (g) of section 9-104 sets forth certain matters then excluded from the provisions of article 9 and provided that: "This Article does not apply * * * (g) to a transfer of an interest or claim in or under any policy of insurance or contract for an annuity including a variable annuity".

There is a conflict of authority in other jurisdictions on whether insurance payments due to the casualty loss of collateral are "proceeds" within the scope and intent of article 9 of the Uniform Commercial Code. (Cf. *Quigley v Caron*, 247 A2d 94 [Me] [holding they are not within article 9]; *Universal C. I. T. Credit Corp. v Prudential Inv. Corp.*, 101 RI 287 with *PPG Ind. v Hartford Fire Ins. Co.*, 531 F2d 58.) Although the question is one of first impression in New York, we favor the reasoning of the Court of Appeals for the Second Circuit in *PPG Ind. v Hartford Fire Ins. Co. (supra)*, that the statute was intended to include insurance moneys received on a casualty loss as "otherwise disposed of" collateral and that the exclusion contained in section 9-104 was designed to cover those more unique transactions where other forms or types of insurance are offered as collateral.

We reject defendant's argument of nonfeasance on the part of plaintiff in not taking remedial steps after the Bradys did not respond to the request to submit proof of insurance. While it may have been better banking practice to do so, plaintiff was under no obligation to proceed since its protection under the statute was completed with the filing of the financing statement. Plaintiff properly pleaded an action in conversion, and Special Term correctly granted summary judgment (see *AMF Inc. v Algo Distrs.*, 48 AD2d 352).

The order and judgment should be affirmed, with costs.

LARKIN, J. (dissenting). We respectfully dissent. In 1975, the year in which the car was destroyed and the insurance proceeds from the policy came into being, such funds were not "proceeds" protected by the filing of a security agreement under the Uniform Commercial Code. In fact, such funds were statutorily excluded: "This Article does not apply * * * (g) to a transfer of an interest or claim in or under any policy of insurance or contract for an annuity including a variable annuity" (Uniform Commercial Code, § 9-104).

It was not until 1977, when the Uniform Commercial Code was amended, that such funds payable under an insurance policy were included in the definition of "proceeds" and thus protected by a filing. Section 19 of chapter 866 of the Laws of 1977, provided in part: "(1) 'Proceeds' includes whatever is received upon the sale, exchange, collection or other disposition of collateral or proceeds. *Insurance payable by reason of loss or damage to the collateral is proceeds,* except to the extent that it is payable to a person other than a party to the security agreement" (Uniform Commercial Code, § 9-306; emphasis supplied). This expanded definition of the term "proceeds", however, did not become effective until July 2, 1978. Therefore, it is not applicable to the facts herein.

A creditor protects its security interest by filing a financing statement in the county of the debtor's residence at the time the debt was incurred (Uniform Commercial Code, § 9-401, subd [1], par [a]). If the initial filing is proper, it remains effective even if the debtor moves to another county or moves the collateral (Uniform Commercial Code, § 9-401, subd [3]). Therefore, under the majority ruling in this case an insurance company which issues a collision policy to an applicant who thereafter sustains a collision loss must determine before payment if there is any security interest filed against the car covered by the collision policy. At the very least, the insurer must determine the county of residence of the insured, or the several counties of residence of the insured, and check the indices in those counties to see if there was an effective security interest filed therein. Failure to do so is to pay over to the insured at the company's peril. At the time pertinent herein, such a mandate was not contemplated by the Legislature. It was, in fact, statutorily excluded (Uniform Commercial Code, § 9-104).

The judgment should be reversed.

MAIN and MIKOLL, JJ., concur with KANE, J. P.; LARKIN and HERLIHY, JJ., dissent and vote to reverse in an opinion by LARKIN, J.

Order and judgment affirmed, with costs.