696 F.2d 213
 83-1 USTC P 9126, 35 UCC Rep.Serv. 244
 Juan SANCHEZ and Maria Sanchez, Plaintiffs-Appellees,
v.
The UNITED STATES of America, Department of Treasury,
Internal Revenue Service, Defendants-Appellants,
and
Sapperstein, Hochberg & Haberman Inc., Arismendy Carrero,
Consolidated Insurance Companies, Jack Solomon, Ende
Refrigerator & Store Fixture Co., Inc., Joseph Victoria &
Co., Assignee for the Benefit of Creditors, Condal
Distributors, Inc., Vitarroz Corp., Angelo L. Ortiz, Goya
Foods, Inc., and William G. Emanuel & Sons, Inc., Defendants.
 No. 92, Docket 82-6108.
 United States Court of Appeals,
Second Circuit.
 Argued Sept. 22, 1982.
Decided Dec. 13, 1982.
 
 Susan Millington Campbell, Asst. U.S. Atty., New York City (John S. Martin, Jr., U.S. Atty., S.D.N.Y., Richard N. Papper, David M. Jones, Asst. U.S. Attys., New York City, on the brief), for defendants-appellants.
 Stanley R. Reckler, New York City, for plaintiffs-appellees.
 Before LUMBARD, MESKILL and CARDAMONE, Circuit Judges.
 CARDAMONE, Circuit Judge:
 
 
 1
 This appeal presents a single issue: which party is entitled to $16,400 in fire insurance proceeds--the sellers of real property damaged by fire who took a security interest in the "proceeds" of the property under the contract of sale, or the United States as tax lienor of the buyers? The law of New York clearly provides the government with a priority that, leaving sympathy aside, we are obliged to effectuate.
 
 
 2
 * The facts giving rise to this action are undisputed. In 1975 Juan and Maria Sanchez contracted to sell their Manhattan grocery store to Arismendy Carrero. At the closing the unpaid balance of the purchase price was secured by an agreement giving the Sanchezes a security interest in the store and "all proceeds thereof." The security agreement obligated Carrero to maintain fire insurance on the collateral and name the Sanchezes as mortgagees in Carrero's insurance policy. In addition, the security agreement provided that "all sums which may become payable under such insurance" were assigned to the Sanchezes as additional security for indebtedness. In April 1975 the Sanchezes filed a UCC-1 Financing Statement and a copy of the security agreement with the New York County Register but failed to file a copy with the New York Secretary of State. The Financing Statement recited that the collateral was all the "personal property in and upon the grocery store premises at 415 Amsterdam Ave., N.Y.C." The "proceeds" box on the statement was not checked.
 
 
 3
 On December 12, 1975 a fire damaged the grocery store. Carrero hired the insurance adjustment firm of Sapperstein, Hochberg & Haberman, Inc. (Sapperstein) to negotiate a settlement with Consolidated Insurance Companies (Consolidated), which had insured the store against fire. Carrero ultimately accepted a settlement from Consolidated for $16,400. A check in that amount, payable to Juan Sanchez, Sapperstein, Carrero and various judgment creditors, was issued by Consolidated and delivered to Sapperstein in September 1976. This check, held in escrow by Sapperstein prior to commencement of the instant case constitutes the fund over which the government and the Sanchezes both claim ownership.
 
 
 4
 The government's claim against the fund is based upon federal income tax deficiencies assessed against Arismendy and Yolanda Carrero on January 5, 1976 for the 1974 taxable year. The government filed a Notice of Tax Lien with the New York City Register on May 13, 1976 and served on Sapperstein a Notice of Levy in the amount of $13,210.90 on December 5, 1976. The Sanchezes' claim to the check is based upon their purported security interest in the fund as "proceeds" of the store.
 
 
 5
 In February 1979 Juan and Maria Sanchez commenced this action against the United States and other claimants to determine the respective parties' rights to the $16,400. The government moved for partial summary judgment on the ground that the Sanchezes' claim to the fund was not based on a perfected security interest and that, therefore, the government's after-acquired tax lien had priority. Specifically, the government argued that under New York law the insurance funds were not "proceeds" in which the Sanchezes had a security interest. The government further contended that the Sanchezes' failure to file the UCC-1 Financing Statement with New York's Secretary of State limited their perfected security interest to the store fixtures.
 
 
 6
 Following a brief hearing, Magistrate Sinclair rejected the government's principal argument and concluded that the Sanchezes held a perfected security interest in the insurance fund as "proceeds" of the store. With respect to the scope of this security interest, however, the Magistrate agreed with the government's secondary contention that the Sanchezes' security interest was limited to the amount attributable to lost store fixtures. Further, the Magistrate upheld Sapperstein's undisputed right to be paid its adjuster's fee out of the fund. Thus, he recommended that summary judgment be entered first in favor of Sapperstein for its fees and second in favor of the Sanchezes for $7,769 attributable to the loss of store fixtures. The Magistrate then recommended that the balance of the fund--$6,992--be awarded to the United States on its tax lien, which he held was subordinate to the Sanchezes' security interest in the fixtures. By order of January 21, 1982 the United States District Court for the Southern District of New York, Broderick, J., adopted the Magistrate's Report and Recommendation and entered judgment accordingly.
 
 II
 
 7
 On appeal the United States and the Sanchezes both agree that the sole issue before us--whether or not the insurance fund was "proceeds"--must be determined under the law of New York, where the purported security interest arose. See PPG Industries, Inc. v. Hartford Fire Insurance Co., 531 F.2d 58, 60-61 (2d Cir.1976); I.R.C. Sec. 6323(h)(1) (1976). The insurance fund here in dispute was created in 1976. In 1977 the State Legislature of New York amended New York Uniform Commercial Code (N.Y.U.C.C.) section 9-306 to provide explicitly that payments of insurance benefits are "proceeds" to which a security interest may attach. The effective date of this amendment, however, was postponed until July 2, 1978. Before any New York court addressed the issue of whether insurance funds which came into being prior to the 1978 effective date of the amendment could be considered "proceeds", the PPG Court predicted that the state courts would find such payments to be "proceeds" under pre-1978 New York law. See 531 F.2d at 61. The Magistrate relied upon PPG in holding that the 1976 insurance payment by Continental was "proceeds" in which the Sanchezes had a valid security interest. In relying upon PPG the Magistrate obviously did not consider himself bound by the contrary decision of the New York Court of Appeals in First National Bank of Highland v. Merchant's Mutual Insurance Co., 49 N.Y.2d 725, 426 N.Y.S.2d 267, 402 N.E.2d 1168 (1980).
 
 
 8
 In First National the plaintiff bank held a perfected security interest in the debtors' automobile. See First National Bank of Highland v. Merchants Mutual Insurance Co., 65 A.D.2d 59, 60, 410 N.Y.S.2d 679 (3d Dep't 1978), rev'd, 49 N.Y.2d 725, 426 N.Y.S.2d 267, 402 N.E.2d 1168 (1980). After the automobile was destroyed in a collision, the defendant insurance company sent to the debtors a check in satisfaction of the their claim under an automobile insurance policy issued in their names. Because the debtors had failed to name the bank as loss payee as required by their contract with the bank, the bank sued the insurance company for conversion of the proceeds arising from the loss of the automobile. Expressly relying upon our decision in PPG, the Appellate Division, Third Department, of the New York State Supreme Court held that the pre-1978 payment under the casualty insurance policy constituted Article 9 "proceeds". This gave the bank a perfected security interest in the insurance check.
 
 
 9
 Two justices dissented. In concluding that pre-1978 insurance payments were not "proceeds" they first reasoned that such funds were in fact statutorily excluded from Article 9 coverage by N.Y.U.C.C. Sec. 9-104(g), which provides that the Article does not apply "to a transfer of an interest or claim in or under any policy of insurance." Id. at 61-62, 410 N.Y.S.2d 679. The dissenters further concluded that the 1977 amendment of N.Y.U.C.C. Sec. 9-306 to include insurance payments within the definition of "proceeds" did not apply retroactively to funds paid prior to July 2, 1978. Id. at 62, 410 N.Y.S.2d 679. The dissenting justices also stated that inclusion of pre-1978 insurance payments within the definition of "proceeds" would burden insurance companies with the task of discovering--prior to settling a casualty claim--whether there were any outstanding security interests in the damaged property. Id. This burden, they stated, was not mandated by the Legislature. Id.
 
 
 10
 On appeal to the New York Court of Appeals, that court reversed the Appellate Division majority "for the reasons stated in the dissenting opinion." First National, 49 N.Y.2d at 726, 426 N.Y.S.2d 267, 402 N.E.2d 1168. Thus, the Court of Appeals effectually held that pre-1978 casualty insurance payments were not "proceeds" subject to a security interest in the damaged collateral. See Donnelly & Donnelly, 1980 Survey of New York Law--Commercial Law, 32 Syracuse L.Rev. 156, (1981).
 
 
 11
 To comply with the principle of comity which undergirds our federal system, we are obliged to give full effect to decisions of New York's highest court on issues involving the application of New York law. See Erie Railroad Co. v. Tompkins, 304 U.S. 64, 78, 58 S.Ct. 817, 822, 82 L.Ed. 1188 (1938). Since First National held that pre-1978 insurance payments are not "proceeds" under Article 9 of the N.Y.U.C.C., the Magistrate and district court erred in adopting a contrary view of New York law.
 
 
 12
 The Sanchezes argue that First National is distinguishable from the present case and therefore not controlling. They assert that the New York Court of Appeal's decision in First National was based entirely upon that portion of the dissent which urged that New York's legislature did not intend to require insurers, at the risk of paying double claims, to check for security interest filings on damaged collateral. Since the insurer in the present case, Consolidated, was notified of the Sanchezes' security interest and not exposed to any potential double liability, plaintiffs assert that the single rationale underlying First National is inapposite here. They contend that First National should be confined to cases involving disputes between secured parties and insurance companies.
 
 
 13
 This argument is unpersuasive for two reasons. First, the New York Court of Appeals in First National held that pre-1978 insurance payments were not Article 9 "proceeds" for the "reasons" (plural) stated in the dissenting opinion. 49 N.Y.2d at 726, 426 N.Y.S.2d 267, 402 N.E.2d 1168. We have no basis upon which to conclude that the court adopted only one of the dissenters' reasons, and did not adopt their first conclusion that N.Y.U.C.C. Sec. 9-104 excluded insurance payments from Article 9 coverage. Had New York's highest court desired to limit its adoption of the dissenting view in the Appellate Division simply to one of the rationales there expressed, it could readily have done so. Second, plaintiffs interpretation of First National would result in the curious rule that under New York law pre-1978 insurance payments are Article 9 "proceeds" in disputes between two secured parties, but not "proceeds" in similar disputes involving an insurance company and a secured party. This unsupportable distinction finds no basis in the Uniform Commercial Code and we see nothing in either the New York Court of Appeal's decision or the Appellate Division dissent to suggest that New York's highest court intended to adopt any such anomalous rule.
 
 
 14
 The order of priority among competing liens "depend[s] on the time [they] attached to the property in question and became choate." See United States v. City of New Britain, 347 U.S. 81, 86, 74 S.Ct. 367, 370, 98 L.Ed. 520 (1954). Given the fact that the 1976 fire insurance check is not Article 9 "proceeds" to which a security interest may attach under New York law, the government's tax lien clearly takes priority over the Sanchezes' inchoate interest in the check. Thus the government is entitled to the full amount of the check, less the amount which the court below properly awarded to Sapperstein.
 
 
 15
 The district court's order granting summary judgment in favor of the Sanchezes against the government is reversed and the case is remanded to the district court with instructions to enter summary judgment in favor of the United States in accordance with this opinion.