**AMERICAN FURNITURE COMPANY, INC., Plaintiff,**

v.

**EXTEBANK, Defendant.**

**No. 86 CV 2472.**

United States District Court, E.D. New York.

Dec. 18, 1987.

---

Margiotta & Ricigliano, Uniondale, N.Y., for plaintiff; by John F. Principe.

Cahn Wishod Wishod & Lamb, Melville, N.Y., for defendant; by Bruce H. Kaplan.

## MEMORANDUM AND ORDER

PLATT, District Judge.

Defendant moves this Court for summary judgment pursuant to Federal Rule of Civil Procedure 56 dismissing the amended complaint and granting summary judgment on the defendant's counterclaim.

Plaintiff American Furniture Company, Inc. (American), commenced this action on July 24, 1986, seeking money damages for defendant Extebank's alleged seizure and conversion of goods owned by American. In its counterclaim, Extebank seeks damages for goods that it claims American converted by interfering with Extebank's security interest in the inventory, equipment, accounts and all proceeds of Northeast Contract Drapery, Inc. (Northeast). Both sides have conducted discovery in the form of pre-trial depositions. This motion is based on the evidence gathered during discovery.

## FACTS

The material facts are not in dispute. On December 20, 1983, Northeast signed a Security Agreement and Financing Statements granting Extebank a security interest in all Northeast's existing and after-acquired inventory, equipment, and accounts and all proceeds thereof as security for a one million dollar line of credit from Extebank.[1]

Prior to March 1985, American entered into a contract with Nova International, Inc. (Nova), a non-party with a construction contract with the United States government, to provide Nova with "rooms" for a United States military facility in Egypt. In March 1985, American, a furniture manufacturer, entered into a contract with Northeast, a manufacturer of soft goods, under which Northeast would supply bedspreads, draperies, and other products to American for resale to Nova with its furniture. This agreement was divided into several segments.

In September 1985 the goods that are the subject of this lawsuit were shipped to American by Northeast. As a result of a request for modifications by Nova, American returned a portion of the goods to Northeast in late October 1985. On December 20, 1985, in response to a demand by Northeast for payment for the goods, American exercised a set-off against monies owed it by Northeast and paid the balance of $7,620.61 by check.

In January 1986 Northeast owed $960,-000 to Extebank. Extebank demanded payment and, when it became clear that Northeast could not pay, Extebank required Northeast to collect its outstanding accounts and have the account debtors send the money directly to Extebank. The goods returned by American for modification were then sold directly to Nova and the proceeds sent directly to Extebank by wire transfer from Nova's bank. American is suing Extebank for the conversion of these goods.

## DISCUSSION

Under Federal Rule of Civil Procedure 56 summary judgment is proper if there is no dispute of material facts and the moving party is entitled to judgment as a matter of law. In this case there is no dispute of material facts. The only dispute concerns the legal conclusions to be drawn from the facts.

### Exercise of Set–Off by American

American claims that its purchase of goods from Northeast conferred "buyer in the ordinary course of business" status upon it and, therefore, it purchased the goods free of Extebank's security interest.

Unless Article 9 of the Uniform Commercial Code (U.C.C.) provides otherwise, the interest of a secured party continues in collateral "notwithstanding sale, exchange or other disposition thereof, unless the disposition was authorized by the secured party ... and also continues in any identifiable

---

1. Extebank filed U.C.C. financing statements on January 4, 1984, with the New York State Secretary of State, thereby perfecting the security interest of Extebank and putting the plaintiff and others on notice of the Security Agreement.

proceeds...." U.C.C. § 9–306(2) [2]; *Aircraft Trading and Services, Inc. v. Braniff, Inc.,* 819 F.2d 1227, 1234 (2d Cir.), *cert. denied,* —— U.S. ——, 108 S.Ct. 163, 98 L.Ed.2d 118 (1987). However, the Code makes an exception in the case of a "buyer in the ordinary course of business."

Uniform Commercial Code section 1–201(9) defines a "buyer in the ordinary course of business" as:

> [A] person who in good faith and without knowledge that the sale to him is in violation of the ownership rights or security interest of a third party in the goods buys in ordinary course from a person in the business of selling goods of that kind.... "Buying" may be for cash or by exchange of other property or on secured or unsecured credit ... but does not include a transfer in bulk or as security for or in total or partial satisfaction of a money debt.

Uniform Commercial Code Article 9 sets forth the priorities of persons interested in property subject to a security interest. Section 9–307 provides that:

> (1) A buyer in ordinary course of business ... other than a person buying farm products from a person engaged in farming operations takes free of a security interest created by his seller even though the security interest is perfected and even though the buyer knows of its existence.

The new value requirement for buyer in the ordinary course status ensures that the secured party's interest in the collateral will be protected. *See United States v. Handy and Harman,* 750 F.2d 777, 781–82 (9th Cir.1984). Were a buyer able to use a pre-existing debt to pay for goods subject to a security interest, he would be able, as an unsecured creditor, to place himself ahead of the secured party. This usurpation would frustrate the intention of Article 9 to protect secured creditors. *Id.* at 782.

■ American claims that it is a "buyer in the ordinary course of business." However, it purchased the goods from North-east, not by giving new value, but by setting off a debt owed it by Northeast against the amount due on the goods. This action removed American from buyer in the ordinary course status. *See First National Bank & Trust Company of Oklahoma City v. Iowa Beef Processors, Inc.,* 626 F.2d 764, 769–70 (10th Cir.1980). Consequently, Extebank's security interest in the collateral continued pursuant to U.C.C. section 9–306(2).

*Rights of Creditor on Default*

■ After the default, a secured party has the right to take possession of the collateral, U.C.C. § 9–503, or "dispose of the collateral on the debtor's premises...." *Id.* Under U.C.C. section 9–504, a secured party may dispose of the collateral in any "method, manner, time, place, and terms [that are] commercially reasonable." Only the debtor and other persons holding security interests in the collateral must be notified. U.C.C. § 9–504(3). The sale of the goods by Extebank to Nova after default was permitted under the U.C.C. and did not interfere with any interest American had in the goods. Extebank's interest was superior to that of American.

American contends, however, that Extebank had to take possession of the collateral after default. This is not required by U.C.C. section 9–503. Additionally, American claims that Extebank failed to declare a default; the U.C.C. only requires the existence of a default. *See* U.C.C. §§ 9–503, 9–504(1). *See also Northern Acceptance Company of America v. Virginia Capital Bank,* 491 F.Supp. 1269, 1276 (E.D.Va.1980). Further, Extebank had the right to collect the amount paid by Nova as proceeds of the collateral under U.C.C. section 9–302.

Consistent with the above, American has no claim against Extebank for seizure and conversion of goods owned by American. Extebank's motion for summary judgment to dismiss the complaint is therefore granted.

---

**2.** All citations to the Uniform Commercial Code are to N.Y.U.C.C. (McKinney 1964 and 1987 Supp.).

**458**

*Counterclaim*

■ Extebank claims that American owes it the value of the goods not returned for modification that were subject to the security interest and for which American paid by means of the set-off. If inventory subject to a security interest is sold and is no longer in the debtor's possession, the secured party may maintain an action against the purchaser for repossession or conversion. *Handy and Harman,* 750 F.2d at 786; *Bank of New York v. Margiotta,* 99 Misc.2d 423, 425, 416 N.Y.S.2d 493, 495 (Dist.Ct. Suffolk County, 1st Dist., 1979); *Smith v. Guzman,* 16 U.C.C.Rep. Serv. (Callaghan) 852, 856–57 (N.Y.Sup.Ct., Suffolk County, 1975). *See also* U.C.C. § 9–306 Comment 3 (1977); *Aircraft Trading,* 819 F.2d 1227, 1230 (availability of cause of action assumed in similar circumstances).

■ When American resold the goods it obtained from Northeast pursuant to the set-off, it converted the collateral that was subject to Extebank's security interest. Thus, American interfered with Extebank's rights of ownership in the goods and is liable for conversion of the goods. *See First National Bank of Highland v. Merchants Mutual Insurance Company,* 89 Misc.2d 771, 774, 392 N.Y.S.2d 836, 838 (N.Y.Sup.Ct., Ulster County, 1977), *aff'd,* 65 App.Div.2d 59, 410 N.Y.S.2d 679 (3d Dept.1978), *rev'd on other grounds,* 49 N.Y.2d 725, 426 N.Y.S.2d 267, 402 N.E.2d 1168 (1980). The only figure for Extebank's damages before the Court is the uncontested figure contained in defendant's reply brief. Therefore, the defendant shall submit a judgment reflecting this decision.

Accordingly, summary judgment is hereby granted to defendant. The complaint is dismissed and the defendant is entitled to damages on its counterclaim.

SO ORDERED.