## Musselman et ux., Appellants, *v.* Sharswood Building and Loan Association et al.

Argued May 20, 1936.   Before KEPHART, C. J., SCHAF-
FER, MAXEY, LINN, STERN and BARNES, JJ.

*Ashton Locke Worrall,* with him *Charles G. Gartling,*
for appellants.

*George S. Wolbert,* for appellee.

OPINION BY MR. JUSTICE BARNES, October 5, 1936:

This is a proceeding in equity for the cancellation of an instrument whereby the plaintiff D. Paul Musselman assigned a part of his life interest in his father's estate to the defendant building and loan association as additional security for a mortgage loan. Subsequently Musselman assigned to his wife his entire interest in his father's estate, subject to the rights of the building and loan association. Both husband and wife, in their respective interests, now join in seeking cancellation of the assignment to the defendant association, on the ground that the conditions upon which it was given have been fulfilled. The case was heard upon bill, answer and proofs. The learned chancellor who heard the testimony entered a decree nisi dismissing the bill, which, after argument upon plaintiffs' exceptions, was made final by the court in banc. Plaintiffs appealed.

The parties, by a stipulation under our Rule 56, have filed an agreed statement in lieu of printing the pleadings and evidence before the court below. The pertinent facts, as they appear therefrom, may be summarized as follows: On April 28, 1925, D. Paul Musselman was the owner of premises 1501-03 North Sixteenth Street (Northeast corner of Sixteenth and Jefferson Streets) in the City of Philadelphia. Under this date he executed and delivered to Lehigh University his bond and mortgage secured upon said premises in the principal sum of $40,000. Subsequently Musselman was divested of the ownership of the property by a sheriff's sale, but arranged to re-acquire it on June 21, 1928. To finance its repurchase, Musselman applied to the defendant building and loan association for a second mortgage upon the property in the amount of $20,000. The application was granted, but upon condition that additional security to the extent of $5,000 be furnished. Musselman agreed to provide the required security.

As part of the arrangement, the property was first conveyed to one Katherine Black, who acted for Musselman

as holder of the title for the purpose of creating the second mortgage. On June 21, 1928, Black executed a bond and second mortgage for $20,000 in favor of the defendant association, and then conveyed the property to Musselman under and subject to the two mortgages, aggregating $60,000. At the same time Musselman executed a collateral bond in favor of the association binding himself to perform all the covenants and obligations of the mortgage in the event of default by Black. It was specifically provided in the second mortgage as follows: "It being understood and agreed that the failure on the part of the mortgagor, her heirs, executors, administrators, successors or assigns, to maintain and deliver policies of fire insurance as aforesaid or to produce to the mortgagee, its successors or assigns, the receipt for the taxes, municipal claims of any character or the interest on the prior encumbrance when due shall be conclusive that the same are not paid, and the *mortgagee,* its successors or assigns, *may insure the buildings, pay the premiums, taxes, municipal claims* of any character, *or the interest on the prior encumbrance,* and to prevent or discontinue proceedings on the prior encumbrance may pay an attorney's fee. . . . Any moneys paid as aforesaid *shall be added to and become a part of the principal debt* secured by this present mortgage, and any payments thereafter made to the mortgagee, its successors or assigns, *shall first be appropriated to repay to it or them all moneys expended as aforesaid."* As collateral security for this mortgage loan, 100 shares of stock of the association were subscribed to and pledged with the association.

On the same day, June 21, 1928, Musselman executed and delivered to the association two other instruments in compliance with its requirement for additional security. The first of these was a bond in favor of the association in the amount of $5,000, *to remain in force until such time as the principal of the said mortgage of $20,000 shall have been so reduced that the net amount due the association on the loan shall not exceed the sum*

*of $15,000.* The second instrument, which is the one now sought to be cancelled, was an assignment of a part of the income to which Musselman was entitled from his father's estate under the latter's will. By this document, Musselman assigned to the association the monthly sum of $56.25, payable quarter-annually, from the net income due said D. Paul Musselman upon the estate of his father, David G. E. Musselman, deceased," to be used in payment on account of the monthly dues, interest, premiums, etc., upon the aforesaid mortgage of $20,000 until such time as the said $20,000 mortgage aforesaid has been reduced by payments on said shares collaterally assigned to said assignee until the net amount due the association from the said mortgagor on said loan shall not exceed the sum of $15,000 or the said mortgage has been paid off in full, whichever event shall happen first."

On October 28, 1929, the first mortgage held by Lehigh University matured. As Musselman was unable to comply with the demand of the mortgagee that the principal of this obligation be reduced, the defendant association with his consent and on his account paid $10,000 in reduction of the mortgage principal, and $504.83 for interest and other charges, whereupon it was extended for a period of three years. Shortly thereafter, on November 19, 1929, Musselman conveyed the property in question, subject to the two mortgages, to one Margaret Sweeney, the nominee of the defendant association. This was done under an agreement between the parties that the title was to be held by this nominee to protect the interests of the association, and that in the event of a sale of the property any amount received in excess of the mortgage debt of $20,000 and the additional $10,000 paid on account of the first mortgage by the association, would be paid over to Musselman.

At the time the second mortgage was created, the parties designated as Musselman's real estate broker, one John Lipsey, to collect all the rents from the property,

as well as the income payable under the assignment, and apply the same to the payment of the carrying charges, including the first mortgage interest, taxes, water rent and insurance premiums, and to the payment of dues, interest and premiums on the second mortgage, and the stock pledged as security therefor.

Musselman himself at no time made any payments of his obligation upon either mortgage. The sums collected by Lipsey were turned over by him to the association, but they proved to be insufficient to pay all the charges against the property. The association, over a period extending from January, 1929, to July, 1932, supplied the deficiency in order to meet the carrying charges and taxes on the property. However, default occurred upon the first mortgage, and on September 21, 1932, the property was again sold at sheriff's sale upon a foreclosure under this prior encumbrance, and the interests therein, both of the association and Musselman, were lost.

The association claims that its total investment in the property amounts to $56,517.93, which includes the second mortgage and the interest thereon; as against this sum it has received directly or from Lipsey for the account of plaintiff, only $11,737.30, leaving a net amount due the association of $44,780.63, which it asserts it is entitled to receive as the principal of the second mortgage so increased according to its terms. The chancellor found that the amount owing by the defendant was in the sum claimed by the association. The court in banc held that the net amount due by defendant was at least $28,300.29, the difference representing the elimination of, as the court says, "every dollar about which there can be the slightest doubt or uncertainty."

The payments received by the association under the assignment here in question (which were included in the $11,737.30 item credited to Musselman) have amounted to the aggregate sum of $2,868.75 since the date of its execution, and the association has continued to collect

the sums payable to it under this assignment and apply them to the debt.

Plaintiffs' principal contention is based upon the fact that from the amounts received through Lipsey, the association has credited $5,400.00 as payments on the stock pledged as collateral for the second mortgage. It is argued that by the terms of the assignment such payments were to be considered in reduction of the mortgage, and as this reduces the mortgage from $20,000 to below $15,000 the conditions of the assignment have been fulfilled and it should be cancelled.

This argument wholly ignores the language of the second mortgage,—which Musselman assumed and by which he is bound. That instrument, as we have seen, expressly provides that payments made by the mortgagee for insurance, taxes and interest on the first mortgage shall be added to and increase the principal sum of the mortgage. When, therefore, the association paid over $12,000 for such items the principal of the mortgage was increased by that amount to over $32,000. This does not take into consideration the other payments made by the association, and interest on the second mortgage, which normally would have to be discharged before making reduction of the principal. It is clear that the total of all payments received by the association on plaintiffs' account is less than the amount by which the principal of the second mortgage has been increased. Obviously the principal has not been reduced below $20,000 but has on the contrary been increased above that figure. The assignment plainly states that the association is entitled to collect upon the assignment until the debt due under the provisions of the mortgage is reduced below $15,000. This has not occurred. Where the language used is plain and unambiguous, the rights of the parties must be determined by the provisions of the instruments wherein they committed their agreement to writing: *Atherton v. Clearview Coal Co.*, 267 Pa. 425; *Cannon v. Bresch*, 307 Pa. 31; *Robinson v. Stover*, 320 Pa. 308.

It is further contended that when the property was conveyed, under and subject to the mortgages, to Margaret Sweeney, a nominee of the defendant association, the association assumed payment of the mortgages. As a result, appellants argue, there was a merger of the fee and the mortgage held by the association, discharging the association and terminating the assigment. We cannot accept this interpretation of the facts. Whether a merger takes place when title is conveyed to a nominee of the mortgagee is always a question of intention: *Fair Oaks B. & L. Assn. v. Kahler,* 320 Pa. 245, and see also cases therein cited. The facts of the instant case clearly negative any intention of merger. For almost three years after the conveyance to Margaret Sweeney, until title to the property was lost by foreclosure of the first mortgage, the parties continued to treat Musselman as the real owner of the property, and the rents were collected by his broker for payment to the association. Under these circumstances it cannot be held that the defendant association assumed payment of the mortgages, or that the second mortgage was discharged by merger.

The decree is affirmed, costs to be paid by appellants.