**In re Rosalind M. WOODYARD and Larry C. Woodyard, Debtors.**

**Rosalind M. Woodyard and Larry C. Woodyard, Plaintiffs,**

**v.**

**Commercial Credit Plan Consumer Discount Company, Defendant.**

**Bankruptcy No. 1–98–00149.**
**Adversary No. 1–98–00084A.**

United States Bankruptcy Court,
M.D. Pennsylvania,
Harrisburg Division.

March 28, 2000.

James M. Bach, Mechanicsburg, PA, for Rosalind M. Woodyard.

James M. Bach, Mechanicsburg, PA, for Larry C. Woodyard.

Dino A Ross, Harrisburg, PA, for Commercial Credit.

## MEMORANDUM

ROBERT J. WOODSIDE, Chief Judge.

### Procedural History

On January 12, 1998, Rosalind M. Woodyard and Larry C. Woodyard (Debtors) filed a Petition in Chapter 7. On March 26, 1998, they initiated the instant adversary action to compel turnover of property to the estate pursuant to 11 U.S.C. § 547(a). After Commercial Credit Plan Consumer Discount Company (CCPC) filed an objection to the Complaint, Debtors amended it, and then CCPC filed an answer. After a conference with me, the parties agreed that there were no issues of material fact and that the matter could be decided on summary judgment. The parties then filed stipulations of fact and cross motions for summary judgment. Briefs have been filed, and the matter is now ready for decision. I have jurisdiction pursuant to 28 U.S.C. §§ 157 and 1334. The matter is core pursuant to 28 U.S.C. § 157(b)(2)(E).

### Factual Findings

In December, 1996, Debtors borrowed some $5,035.66 from CCPC and gave back a security interest in some personalty.

Using proceeds from the loan, Debtors purchased life and disability insurance contracts to ensure repayment of the loan.

The "Disclosure Statement, Note and Security Agreement" which Debtors signed in conjunction with the loan provided as follows:

> Borrower may cancel any of the optional insurance products ... at any time.... If any insurance ... is terminated for any reason, Borrower authorizes and directs that the insurer deliver the premium refund, if any to the Lender, which

may at its option apply it to the unpaid balance of the loan or return it to Borrower.

At the time they filed their bankruptcy Petition, Debtors requested termination of the insurance.

After the insurance was terminated, the unearned premiums were returned to CCPC, who then applied them to the loan. The unearned premiums on the policies as of the date of termination of coverage amounted to some $672.28.

## Discussion

In the matter now before me, part of the loan that the Debtors received went to pay premiums to insure that the loan debt would be paid in the event of Debtors' disability or death. The premiums were paid "up front" but were only "earned" by the insurer periodically. If Debtor canceled the insurance, the Security Agreement allowed CCPC to collect the unearned premiums to help repay the principal. The question now before me is whether the as-yet unearned premiums from the loan should be paid back from the insurance company to the Debtor or to CCPC. In other words, did the unearned premiums become part of the estate on the date of the Petition such that Debtor may exempt them,[1] or did they go directly to CCPC under the contract, or did they become property of the estate and then pass to CCPC as part of a security interest.

Summary Judgment is a procedural device used to avoid unnecessary trial by allowing a court to dispose of a case when the pleadings and discovery products are sufficient to eliminate any genuine issue of material fact. *In re Miller*, 154 B.R. 987 (Bankr.N.D.Fla.1993). Summary judgment should be granted only when the moving party has shown the absence of genuine issues of material fact even while considering the evidence with all doubts resolved in favor of the non-moving party. *Kornegay v. Cottingham*, 120 F.3d 392, 395 (3d Cir.1997). I find no genuine issues of material fact in the instant dispute. The parties have essentially agreed that none exist, and that he issue is one purely of law.

*In re Remcor*, 186 B.R. 629 (Bankr. W.D.Pa.1995) dealt with an issue similar to the instant one. In that case, debtor Remcor had entered into an insurance premium finance agreement with Premium Financing Specialists, Inc. (PFS), whereby PFS agreed to advance a portion of the premium due on Remcor's automobile and liability insurance policies. After Remcor filed its bankruptcy petition, PFS was granted relief from the stay in order to cancel the policies. PFS later moved for modification of the lift-stay order so that it might apply the refunded premiums to the principal debt. The motion was opposed by Sunbeam Corp. which held a prepetition blanket lien against all of Remcor's assets, and ATC Environmental, Inc., which held a postpetition superpriority lien against all of Remcor's assets.

The finance agreements at issue, which were prepared by PFS, contained the following terms:

The named Insured:

1. Assigns to PFS as security for the total amount payable hereunder all unearned premiums and loss payments which may become payable under the policies listed above, as to all of which insured gives PFS a security interest.

*Remcor*, at 631.

The issue for the Court to resolve in that case was whether the unearned premiums were the property of PFS, Sunbeam or ATC. To answer that issue, the Court first decided whether the UCC applied to require PFS to perfect its interest.

---

[1] I note that the Debtors never claimed an interest in these policies on their schedules, and that they similarly filed no claim of exemption over them. For this reason, as well as the reasons set forth in the body of this Memorandum, I need not address the exemption issue.

The Court concluded that it did not; "except for proceeds and priorities to proceeds, Article 9 of the UCC does not apply to the transfer of an interest in any policy of insurance." *Id.*, at 634.

The Court next asked "Is PFS' interest subordinate to the interest of ATC". *Id.* The Court concluded that it was not, because ATC's lien did not attach to the unearned premiums, because such premiums "did not become property of the estate." *Id.*, at 636. The Court cited *Estate of Lellock v. Prudential*, 811 F.2d 186 (3rd Cir.1987) (which Debtor also cites) which "held that a life insurance policy that a debtor had absolutely assigned to a creditor prior to filing for bankruptcy as security for a loan was not property of the estate." *Remcor*, at 636. The *Remcor* Court concluded that "the circumstances of this case compel a similar conclusion with respect to the unearned insurance premiums debtor assigned to PFS". *Id.*

Thus, the only issue to resolve in the instant matter is whether Debtors had made an absolute assignment of the premiums to the lender.

 Pennsylvania law recognizes both legal and equitable assignments. *Brager v. Blum*, 49 B.R. 626, 629 (E.D.Pa.1985). A legal assignment is a transfer of property, a right or interest from one person, the assignor, to another, the assignee, which transfers the entire interest in the thing assigned unless it is qualified. *Huff v. Nationwide Insurance Company*, 167 B.R. 53, 60 (W.D.Pa.1992), *citing, In re Purman's Estate*, 358 Pa. 187, 190, 56 A.2d 86, 88 (1948). To effect a legal assignment, the assignor must at the time of the assignment have a present intent to transfer or divest himself of his rights. *Id., citing, Brager v. Blum, supra, and Melnick v. Pennsylvania Co. for Banking & Trusts*, 180 Pa.Super. 441, 119 A.2d 825, 826 (1956).

I find that the above-quoted provision of the Security Agreement amply demonstrates that an assignment was intended.

That provision gives CCPC full discretion over the disposition of the refunded premiums. It reserves no rights in the Debtors to voice their desires as to that disposition. The parties have not stipulated any facts which indicate that CCPC was required to follow any particular rules or guidelines in deciding whether to apply the premiums to the loan balance or not. The parties have not stipulated any facts indicating that CCPC's use of the funds was in any way limited.

Essentially, what Debtors are arguing is that CCPC's "option" to give the funds to the Debtors was the equivalent of the "right" of the Debtors to receive them. Debtors are incorrect. What Debtors had was a right to receive funds *at CCPC's option*, not a right to such option themselves. In signing the loan documents as written, Debtors in fact relinquished any and all rights to the funds.

In his brief, Debtor's attorney also raises, for the first time, the issue of whether CCPC's acceptance of the unpaid premiums upon Debtor's cancellation of the insurance was a preference. Debtor did not raise this issue in any form whatsoever in his Complaint. Therefore, even under the rules for "notice pleading" set forth in Fed.R.Civ.P. 8(a), CCPC did not have adequate notice to defend this issue.

For these reasons, I conclude that the Debtors have not proven that turnover of the funds is required. Therefore, the Complaint will be dismissed. An appropriate order will be entered.